UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PANDA PAWS RESCUE, et al., | CASE NO. C20-5700JLR |
| Plaintiffs, | ORDER GRANTING IN PART |
| v. | AND DENYING IN PART DEFENDANT'S AMENDED |
| GARY WALTERS, | MOTION TO DISMISS |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant Gary Walters's amended motion to dismiss

Plaintiffs Panda Paws Rescue ("Panda Paws") and Amanda Giese's first amended

complaint.  (Mot. (Dkt. # 14); *see also* Reply (Dkt. # 25).)  Plaintiffs oppose Mr.

Walters's motion.  (Resp. (Dkt. # 20).)  Having considered the motion, the parties'

submissions regarding the motion, the relevant portions of the record, and the applicable

//

//

law,[1] the court GRANTS in part and DENIES in part Mr. Walters's amended motion to dismiss.

## II.    BACKGROUND

**A.    Factual Background[2]**

Panda Paws, founded in 2009, is a Washington non-profit corporation and a "charitable and educational organization that rescues animals with treatable special needs." (Am. Compl. (Dkt. # 9) ¶¶ 1, 12.) It provides veterinary care to rescued animals, finds them adoptive homes, and works to prevent animal cruelty. (*Id.* ¶ 1.) Ms. Giese founded Panda Paws, serves as its president, and runs the organization with her children. (*Id.*)

In 2011, Panda Paws filed its Articles of Incorporation, which named Ms. Giese and Mr. Walters as directors, and named Mr. Walters as "chairman." (*Id.* ¶ 12; *see* Walters Decl. (Dkt. # 15) ¶ 12, Ex. E.[3]) Later that year, Panda Paws filed Articles of Amendment which named Ms. Giese as president and treasurer and Mr. Walters as vice president and secretary. (Am. Compl. ¶ 12.)

Mr. Walters also worked as a videographer and photographer for Panda Paws. (*Id.* ¶ 13.) He and Ms. Giese frequently collaborated to create content for Panda Paws's

---

[1] Panda Paws has requested oral argument. (*See* Resp. at 1.) The court finds oral argument would not be helpful to the disposition of this motion, and therefore declines to hold oral argument. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] For the purposes of a motion to dismiss the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

[3] The court grants Mr. Walter's request that it consider documents that are referred to, but not attached to, the amended complaint. (*See infra* at Section III.A.)

YouTube channel and social media sites.  (*Id.*)  According to Plaintiffs, Mr. Walters

filmed Ms. Giese when she handled the animals, while Ms. Giese chose music for the

videos; wrote text; gave input on lighting, angles, and speed; had substantial input on the

subject matter of the videos; and had the ultimate authority to choose the videos that

appeared on Panda Paws's social media sites.  (*Id.*)

Ms. Giese and Mr. Walters also collaborated to create a logo for Panda Paws (the

"Logo").  (*Id.* ¶ 15.)  The logo is a panda, based on Ms. Giese's nickname, "Amanda

Panda."  (*Id.*)  Mr. Walters encouraged Panda Paws to use the Logo on its application to

become a 501(c)(3) non-profit corporation and was aware that Panda Paws used the Logo

on its website, social media sites, and marketing materials.  (*Id.* ¶ 16.)

Panda Paws "gained national notoriety in 2012" when Ms. Giese rescued a pit bull

named London who needed both of his front legs amputated due to abuse and who

learned to walk with a customized dog wheelchair.  (*Id.* ¶ 19.)  Then, in 2014, a video of

another of Panda Paws's rescue dogs "went viral," attracting more than 7 million views

on YouTube (the "Viral Video").  (*Id.* ¶ 20; *see* Walters Decl. ¶ 1, Ex. A.)  This video

featured a boxer puppy named Duncan Lou Who ("Duncan") who was born with his back

legs fused together.  (*Id.*)  Duncan underwent a double amputation and learned to walk

and run on his front legs, without any assistance.  (Am. Compl. ¶ 20.)  The Viral Video

showed Duncan running on the beach and playing with Ms. Giese, Mr. Walters, and Ms.

Giese's children.  (*Id.* ¶¶ 20, 30.)  In 2018, Ms. Giese began starring in an Animal Planet

television show called "Amanda to the Rescue."  (*Id.* ¶ 21.)  The show airs

internationally, and features Ms. Giese as she cares for animals with medical issues.  (*Id.*)

1    On June 3, 2018, the Panda Paws board of directors voted to remove Mr. Walters

2   from his voting position with the organization.  (*Id.* ¶ 23.)  Mr. Walters "ceased all

3   services for Panda Paws" on October 12, 2018, and the board asked him to turn over

4   administrative control of the Panda Paws website domains.  (*Id.*)  Although Mr. Walters

5   agreed to do so, he did not make any effort to complete the transfers.  (*Id.*)

6    In early 2019, Panda Paws asked Mr. Walters about the status of the domain

7   transfers.  (*Id.* ¶ 24.)  Mr. Walters stated that he would not transfer the domains unless

8   Panda Paws allowed him to adopt Duncan.  (*Id.*)  Although Duncan had appeared "many

9   times" on "Amanda to the Rescue," and had a strong association with Panda Paws, Panda

10  Paws agreed to allow Mr. Walters to adopt Duncan.  (*Id.*)  Mr. Walters, however, did not

11  turn over control of the Panda Paws website domains.  (*Id.* ¶ 25.)  Instead, Mr. Walters

12  redirected the Panda Paws website address to www.duncanlouwho.com, his personal

13  website where he sells merchandise, such as hats and shirts, depicting Duncan.  (*Id.*

14  ¶¶ 25, 29.)

15   In August 2019, Panda Paws, Ms. Giese, and Mr. Walters entered into a settlement

16  agreement regarding the transfer and ownership of the Panda Paws website domain (the

17  "Settlement Agreement").  (*Id.* ¶ 26, Ex. A.)  The Settlement Agreement also included

18  the following language regarding the parties' use of photographs or likenesses of Duncan,

19  Ms. Giese, and Ms. Giese's children:

20       3.    Use of Photography and Likeness.  [Panda Paws] agrees not to use
        any photographs of Duncan taken after February 25, 2019, the date he was
21      adopted by Walters.  [Panda Paws] further agrees not to use any
        photographs of Duncan that (a) were taken by Walters; and (b) do not bear
22      a Panda Paws Rescue watermark.  Walters agrees not to make any use,

reproduce, or publish the likeness, through photography or otherwise, of [Panda Paws] founder Amanda Giese or any of her children.

(*Id.* Ex. A at 2.)

Panda Paws reduced its use of YouTube when "Amanda to the Rescue" went into production in 2018. (Am. Compl. ¶ 27.) During the COVID-19 pandemic in mid-2020, however, Panda Paws decided to return to YouTube. (*Id.*) When Ms. Giese visited the YouTube channel to post content, she found that Mr. Walters had rebranded the Panda Paws channel as "Duncan Lou Who," removed all mention of Panda Paws, and included a link to his www.duncanlouwho.com website. (*Id.* ¶¶ 27-28; *see also* Walters Decl. ¶ 2, Ex. B.) Although Ms. Giese was still listed as the "primary owner" of the channel, Mr. Walters was listed as the channel's "manager" and the recipient of funds generated by the channel. (Am. Compl. ¶ 28.) Five videos that included images of Ms. Giese and her children still appeared on the channel. (*Id.* ¶ 30.) Mr. Walters had also posted the Viral Video, which included images of Ms. Giese and her children, on the www.duncanlouwho.com website. (*Id.*) Although the website stated that all profits from the website and the sale of Duncan merchandise went to Panda Paws, Panda Paws alleges that it never received any such funds. (*Id.* ¶ 29.)

On May 18, 2020, Panda Paws sent Mr. Walters a written demand to stop interfering with its YouTube channel and to remove the Viral Video from his website. (*Id.* ¶ 31.) Mr. Walters responded that he was the sole author and owner of the Panda Paws YouTube channel and "all content embodied therein." (*Id.* ¶ 32.) He asserted that although he may have granted Panda Paws "an implied, nonexclusive license" to use the

1    YouTube channel and content, he "revoked" that license by changing the name of the

2    channel and removing references to Panda Paws.  (*Id.*)  Mr. Walters then sent Panda

3    Paws a cease and desist letter demanding that it stop using the Logo.  (*Id.* ¶ 34.)  He

4    asserted that to the extent he had granted an "implied, non-exclusive license" to use the

5    Logo, that license was "unequivocally revocable and revoked as a result of the parties'

6    severance," including the execution of the Settlement Agreement.  (*Id.*)  He further added

7    that by his letter he "terminated and revoked" any license to use the Logo.  (*Id.*)

8    According to Plaintiffs, Mr. Walters had never before claimed to own the Logo, and

9    Panda Paws had used it for nearly a decade on its website, social media sites, and

10   promotional materials.  (*Id.* ¶ 35.)

11   **B.    Procedural Background**

12          On July 17, 2020, Plaintiffs filed their original complaint in this court.  (Compl.

13   (Dkt. # 1).)  They filed an amended complaint on September 3, 2020.  (Am. Compl.)

14   Panda Paws seeks a declaratory judgment that (a) it has the exclusive right to use the

15   Panda Paws YouTube channel and all videos that Mr. Walters assisted in creating for use

16   on Panda Paws's social media sites; (b) it has the right to use the Logo; (c) alternatively,

17   that Mr. Walters granted Panda Paws a non-exclusive implied license to use the YouTube

18   channel, its content, and the Logo, and that Mr. Walters's purported revocation of the

19   implied license is invalid; and (d) that Mr. Walters is prohibited from using the likenesses

20   of Ms. Giese and her children for any purpose.  (*Id.* ¶¶ 43-57.)  Panda Paws also alleges

21   claims for breach of the Settlement Agreement (*id.* ¶¶ 58-66) and for false association

22   and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (*id.* ¶¶

1  67-80).  Ms. Giese alleges a claim for violation of the Washington Personality Rights

2  Act, RCW 63.60.010-080.  (*Id.* ¶¶ 81-92).

3       On October 13, 2020, Mr. Walters filed a motion to dismiss Panda Paws's claims.

4  (1st MTD (Dkt. # 10).)  Mr. Walters amended his motion to dismiss on October 14, 2020.

5  (Mot.)

6                              **III.    ANALYSIS**

7       Mr. Walters moves the court for partial dismissal of Panda Paws's declaratory

8  judgment claim and for dismissal with prejudice of Panda Paws's claims for breach of

9  contract, false advertising, and false association.  (*See generally* Mot.)  He also seeks

10  dismissal of Ms. Giese's claim for violation of the Personality Rights Act.  (*Id.*)  He also

11  asks the court to take judicial notice of or to consider certain documents that Panda Paws

12  referenced or discussed in its amended complaint but did not attach to that complaint.

13  (*See* Mot. at 3-5.)  The court first addresses Mr. Walters's request for judicial notice or

14  consideration of the documents before turning to his motion to dismiss.

15  **A.    Request for Judicial Notice or Consideration of Documents**

16       Mr. Walters asks the court take judicial notice of or consider the following

17  documents:  (1) the Viral Video (*see* Walters Decl. Ex. A); (2) a screen capture of the

18  Duncan Lou Who YouTube channel (*id.* Ex. B); (3) a series of screen captures of the

19  website www.duncanlouwho.com (*id.* ¶¶ 4-8, Ex. C); (4) a series of screen captures of

20  the website www.de3volution.com (*id.* ¶¶ 9-11, Ex. D); and (5) Panda Paws's Articles of

21  Incorporation (*id.* ¶ Ex. E).  (*See* Mot. at 3-5.)  Plaintiffs agree that their amended

22

1  complaint refers to and thereby incorporates these documents and do not oppose Mr.

2  Walters's request.  (Resp. at 7 n.2.)

3       Although the scope of review on a motion to dismiss for failure to state a claim is

4  generally limited to the complaint, a court may consider evidence on which the complaint

5  "necessarily relies" if:  (1) the complaint refers to the document; (2) the document is

6  central to the plaintiff's claim; and (3) no party questions the authenticity of the

7  document.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting

8  *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006)).  Because these factors are not in

9  dispute, the court grants Mr. Walters's request, and will consider the five documents

10  attached to his declaration in evaluating his motion to dismiss.  The court's consideration

11  of the documents, however, is limited by the principle that it may not draw inferences or

12  take notice of facts that might reasonably be disputed on the basis of those documents.

13  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

14  **B.**  **Motion to Dismiss**

15       **1.**       **Standard for Motions to Dismiss**

16       Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

17  state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When

18  considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

19  the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith*

20  *Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded

21  facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit*

22  *P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court,

however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## 2.    Declaratory Judgment (First Claim for Relief)

Two of Panda Paws's four requests for declaratory relief are at issue in this motion. First, Panda Paws seeks a declaratory judgment that it has "the right to use the Logo because (1) it is the joint author, with Walters, of the logo; (2) Walters is estopped from asserting exclusive ownership; or (3) Walters abandoned any copyright in the Logo[.]" (Am. Compl. ¶ 57(b).) Second, Panda Paws seeks a declaratory judgment that, "[i]n the alternative [to the above,] Walters received consideration in return for granting Panda Paws a non-exclusive implied license to use the YouTube channel, its content, and the Logo, and Walters'[s] purported revocation of the implied license is invalid[.]" (*Id.* ¶ 57(c).)

1    Mr. Walters asserts that the court must dismiss three of Panda Paws's alleged

2    grounds for its entitlement to a declaratory judgment.  Specifically, Mr. Walters asserts

3    that Panda Paws has not alleged facts sufficient to support its claims that Mr. Walters (1)

4    granted Panda Paws an irrevocable implied license in either the videos or the Logo; (2) is

5    estopped from asserting ownership in the Logo; and (3) abandoned any copyright interest

6    in the Logo.[4]  (Mot. at 10-16.)  Mr. Walters does not challenge Panda Paws's declaratory

7    judgment claims based on its assertion of joint ownership of the copyrights to the videos

8    and Logo.

9        *a.*      ***Irrevocable Implied License***

10    An implied license in a copyrighted work is granted when "'(1) a person (the

11    licensee) requests the creation of the work, (2) the creator (the licensor) makes that

12    particular work and delivers it to the licensee who requested it, and (3) the licensor

13    intends that the licensee-requestor copy and distribute his work.'"  *Asset Mktg. Sys. v.*

14    *Gagnon*, 542 F.3d 748, 754-55 (9th Cir. 2008) (quoting *I.A.E. v. Shaver*, 74 F.3d 768,

15    776 (7th Cir. 1996)).  Non-exclusive implied licenses need not be in writing.  *Id.*

16    Although a non-exclusive implied license is typically revocable, the license is irrevocable

17    if the licensee provided consideration for the license.  *Id.* at 757.

18    //

19

20    [4] Although the parties argue in their briefing about whether Panda Paws can claim
exclusive ownership of the Panda Paws YouTube channel and videos under the works made for

21    hire doctrine (*see* Am. Compl. ¶ 57(a)), Mr. Walters has not moved to dismiss on this ground
because he concedes that it raises factual issues that cannot be decided on a motion to dismiss

22    (*see* Mot. at 12 n.6).  Therefore, the court does not address the works made for hire doctrine in
this order.

State contract law governs whether consideration is sufficient to support an irrevocable implied license. *See Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 828 n.11 (9th Cir. 2001). In Washington, consideration sufficient to support a contract is "any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." *Labriola v. Pollard*, 100 P.3d 791, 793 (Wash. 2004). Courts generally will not inquire into the adequacy of consideration; rather, consideration can consist of "any bargained for legal detriment, no matter how seemingly small." *Id.*; *Storti v. Univ. of Wash.*, 330 P.3d 159, 164 (Wash. 2014).

Mr. Walters does not dispute, for the purposes of this motion, that he granted a non-exclusive implied license to Panda Paws to use the Logo, YouTube channel, and videos. (*See* Mot. at 10-11.[5]) Rather, he argues that any license that he did grant was revocable because Panda Paws never paid him for its use of that license. (*Id.*) Panda Paws points out, correctly, that consideration sufficient to support an irrevocable license is not limited to the payment of money. (Resp. at 10-11.) It alleges that Mr. Walters granted it an irrevocable, non-exclusive implied license to use the Logo, the YouTube channel, and the video content because he "received consideration for the license in the form of his role at Panda Paws, his occasional receipt of camera equipment [from Panda Paws], and Panda Paws'[s] use of his company Helix's IT services." (Am. Compl. ¶¶ 47

---

[5] Mr. Walters argues in his reply brief that Panda Paws did not allege an offer and acceptance of an implied license. (*See* Reply at 4.) Because this argument was first raised in reply, however, the court does not consider it. *See Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (noting "[i]t is well established that new arguments and evidence presented for the first time in [a] Reply are waived."). In any event, an intent to offer an irrevocable implied license can be inferred from conduct. *See Asset Mktg. Sys.*, 542 F.3d at 756.

1 (YouTube channel and videos), 51 (Logo).)  Mr. Walters asserts, without citation to

2 authority, that his provision of services to Panda Paws as an officer and through Helix

3 cannot constitute consideration, nor can Panda Paws's "occasional" provision of camera

4 equipment to him.  (Reply at 3-4.)  But because consideration to support a contract can

5 consist of "any bargained for legal detriment, no matter how seemingly small," *Storti*,

6 330 P.3d at 164, the court finds that Panda Paws has plausibly alleged that it provided

7 Mr. Walters consideration sufficient to support the grant of an irrevocable non-exclusive

8 implied license.  The court DENIES Mr. Walters's motion to dismiss Panda Paws's claim

9 for a declaratory judgment that Mr. Walters granted it an irrevocable implied license to

10 use the Logo, the YouTube channel, and the videos.

11   **b.**  ***Estoppel***

12   Panda Paws seeks a declaratory judgment that even if does not jointly own the

13 Logo with Mr. Walters—an allegation that Mr. Walters does not challenge in his motion

14 to dismiss—it nevertheless has "the right to use the Logo because . . . Walters is estopped

15 from asserting exclusive ownership."  (Am. Compl. ¶ 57(c); *see also id.* ¶ 50.)  Panda

16 Paws alleges that estoppel applies because Mr. Walters "knew Panda Paws was using the

17 Logo; he encouraged its use on Panda Paws'[s] 501(c)(3) application; he permitted Panda

18 Paws to use the Logo for nearly 10 years without ever suggesting he owned it or that

19 Panda Paws did not have a right to use it; and Panda Paws invested substantial resources

20 in promoting the Logo and using the Logo on its materials."  (Am. Compl. ¶ 50.)  In its

21 response, Panda Paws argues that Mr. Walters's actions show that he "intentionally led

22

1    Panda Paws to believe that it had a right to use the Logo and that Panda Paws relied on

2    Walters'[s] representations and conduct, to its detriment."  (Resp. at 13.)

3              Mr. Walters asserts that Panda Paws's allegation that he is estopped from asserting

4    ownership in the Logo must be dismissed because estoppel cannot be used "to divest

5    another party of their copyright ownership in a work."  (Reply at 5.)  Rather, he argues,

6    the doctrine of estoppel is properly asserted only as a defense to the copyright owner's

7    claim of infringement.  (*Id.*)  He argues that as the owner of the copyright in the Logo, he

8    has the exclusive rights in the Logo and that Panda Paws has made no allegation that

9    there exists a written document conveying or transferring any of those rights to Panda

10   Paws.  (Mot. at 13 (citing 17 U.S.C. §§ 106, 204(a)).)

11             The court agrees with Mr. Walters.  Panda Paws's cited cases (*see* Resp. at 11) do

12   not support a holding that the doctrine of estoppel can bar a party from asserting

13   ownership in a copyright.  Rather, those cases find only that the doctrine of estoppel can

14   bar a copyright owner from asserting a copyright infringement claim.  *See Interscope*

15   *Records v. Time Warner, Inc.*, CV 10-1662, 2010 WL 11505708 (C.D. Cal. June 28,

16   2010) (finding defendant sufficiently asserted a valid estoppel defense to a copyright

17   infringement action); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014)

18   (noting that the doctrine of estoppel may bar copyright infringement claims).  The court

19   has found no cases endorsing the use of estoppel to prohibit a copyright holder from

20   asserting his or her ownership in the first instance.  Therefore, the court DISMISSES with

21   prejudice Panda Paws's claim for a declaratory judgment that it is entitled to use the

22   Logo because Mr. Walters is estopped from asserting ownership.  *See Lopez v. Smith*, 203

1  F.3d 1122, 1127 (9th Cir. 2000) (where claims are dismissed under Rule 12(b)(6), the

2  court "should grant leave to amend . . . unless it determines that the pleading could not

3  possibly be cured by the allegation of other facts.").

4       c.    *Abandonment of Copyright*

5       Waiver or abandonment of copyright occurs only if there is an intent by the

6  copyright proprietor to surrender rights in his work and allow the public to copy it.

7  *A & M Records Inc. v. Napster Inc.,* 239 F.3d 1004, 1026 (9th Cir. 2001); *Hampton v.*

8  *Paramount Pictures Corp.,* 279 F.2d 100, 104 (9th Cir. 1960).  The abandonment "must

9  be manifested by some overt act indicating an intention to abandon that right."  *Micro*

10 *Star v. Formgen, Inc.,* 154 F.3d 1107, 1114 (9th Cir. 1998).  Inaction alone is insufficient

11 to abandon a right.  *See Hampton*, 279 F.2d at 104 (finding no overt act where there was

12 no consent to public use and no permission given to sell the copyrighted works).

13      Mr. Walters argues that Panda Paws's claim that he abandoned his copyright in the

14 Logo must be dismissed because Panda Paws did not allege any "overt act" that would

15 manifest his intent to abandon his copyright.  (Mot. at 15-16.)  The court agrees.  Panda

16 Paws alleges that Mr. Walters "abandoned any copyright in the Logo by encouraging and

17 facilitating Panda Paws'[s] public use of the Logo, [and] setting up Panda Paws'[s]

18 website on which the Logo featured prominently."  (Am. Compl. ¶ 50.)  None of these

19 acts plausibly indicate Mr. Walters's intent to surrender his rights in the Logo to the

20 public.  Therefore, the court DISMISSES Panda Paws's claim for a declaratory judgment

21 that Mr. Walters abandoned his copyright in the Logo, without prejudice and with leave

22 to amend.

### 3.     Breach of the Settlement Agreement (Second Claim for Relief)

A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant.  *Nw. Independent Forest Mfrs. v. Dep't of Labor and Indus.*, 899 P.2d 6, 8 (Wash. Ct. App. 1995).  Mr. Walters argues that Panda Paws's breach of contract claim must be dismissed because Panda Paws fails to allege a contractual duty that Mr. Walters breached or damages resulting from that breach, and because the Viral Video contains "absolutely" no images of Ms. Giese or her children.  (Mot. at 16-17.)  The court disagrees and concludes that Panda Paws has sufficiently alleged its claim for breach of contract.  First, Panda Paws alleges that Mr. Walters breached his contractual duty, as set forth in the Settlement Agreement, "not to make any use, reproduce, or publish the likeness, through photography or otherwise, of [Panda Paws] founder Amanda Giese or any of her children."  (Am. Compl. ¶ 61 (quoting the Settlement Agreement).)  Second, it alleges that Mr. Walters breached that duty by "displaying the likeness of [Ms.] Giese and her children, included in the Viral Video, on his website www.duncanlouwho.com" and by "displaying videos of [Ms.] Giese and her children on the Panda Paws YouTube channel after he renamed the channel 'Duncan Lou Who.'" (Am. Compl. ¶¶ 63-64; *see also id.* ¶ 30 (alleging that the Duncan Lou Who channel displayed five videos of Ms. Giese and her children[6]).)  Although Mr. Walters argues that the Viral Video does not "feature" Ms. Giese (*see* Reply at 7-8), that is a factual dispute that cannot be resolved on a motion to

---

[6] Panda Paws alleges that the language of the Settlement Agreement placed no temporal limitation on the prohibition of Mr. Walters's use of such images.  (*Id.* ¶ 62.)

1    dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Finally,

2    Panda Paws has alleged that it was damaged by Mr. Walters's breach and that it seeks

3    specific performance of the Settlement Agreement.  (*Id.* ¶ 65-66.)

4         Mr. Walters also contends that Panda Paws's claim that he breached the

5    Settlement Agreement by linking the Viral Video from the www.duncanlouwho.com

6    website must be dismissed because linking does not constitute "display" as a matter of

7    law.  (Reply at 7.)  He cites *Perfect 10, Inc. v. Google, Inc.*, 508 F.3d 1146, 1176 (9th Cir.

8    2007) in support of this argument.  *Perfect 10*, however, dealt with the meaning of

9    "display" in the context of a claim for copyright infringement.  *Id.* at 1159-60.  "Display"

10   is defined by the Copyright Act as "to show a copy [of the copyrighted work], either

11   directly or by means of a film, slide, television image, or any other device or

12   process. . . ."  *Id.* at 1160 (quoting 17 U.S.C. § 101).  It is true that the *Perfect 10* Court

13   found that the defendants' acts of linking to third-party website content in image search

14   results did not constitute "display" under the Copyright Act.  *Id.* at 1160-61, 1176.  Panda

15   Paws, however, did not bring its breach of contract claim under the Copyright Act.  What

16   "display" means within the context of the Settlement Agreement is a disputed matter of

17   contract interpretation that the court cannot resolve on this motion to dismiss.  The court

18   DENIES Mr. Walters's motion to dismiss Panda Paws's breach of contract claim.

19       **4.    Lanham Act § 43(a) Claims (Third Claim for Relief)**

20        In relevant part, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides

21   a civil cause of action against:

22

(1) [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

Thus, Section 43(a) creates two distinct bases of liability:  false association under 15 U.S.C. § 1125(a)(1)(A), and false advertising under 15 U.S.C. § 1125(a)(1)(B).  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).

Panda Paws alleges claims under both bases.  It alleges that it is "internationally recognized . . . as a charitable organization that rescues animals with treatable special needs."  (Am. Compl. ¶ 69.)  It contends that Mr. "Walters'[s] use of the Panda Paws name on his website implies that Panda Paws endorses, approves of, or is otherwise associated with the Duncan merchandise that Walters sells for profit."  (*Id.* ¶ 70.)  It further alleges that Mr. Walters falsely claims that proceeds from the sale of Duncan merchandise go to Panda Paws and implies that his website has a "nonprofit, charitable purpose," even though there is no association between Panda Paws and Mr. Walters, and even though Panda Paws has never received any funds from Mr. Walters's website or his sale of Duncan merchandise.  (*Id.* ¶¶ 71-72.)  It asserts that this conduct constitutes false association and false advertising under Section 43(a) of the Lanham Act.  (*Id.* ¶¶ 73-74.)

1    Mr. Walters argues that both claims must be dismissed.  The court addresses Panda

2    Paws's false advertising claim before turning to its false association claim.

3            ***a.***        ***False Advertising Claim***

4            "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false

5    designations of origin, false descriptions, and false representations in advertising and

6    sales in interstate commerce." *Kische USA LLC v. Simsek*, No. C16-0168JLR, 2016 WL

7    7212534, at *9 (W.D. Wash. Dec. 13, 2016) (citations omitted).  Mr. Walters argues that

8    Panda Paws does not plausibly allege a claim for false advertising because (1) Panda

9    Paws does not have a cause of action for false advertising[7] (Mot. at 18-20), and (2) even

10   if it does have a cause of action, Panda Paws fails to allege facts to state a false

11   advertising claim (Mot. at 20-21).  The court begins by determining whether Panda Paws

12   has alleged facts showing that it has a cause of action under the Lanham Act before

13   turning to the elements of the claim.

14           In *Lexmark*, the Supreme Court set out a two-part test for determining whether a

15   statutory cause of action for false advertising extends to a plaintiff:  (1) the plaintiff's

16   interests must fall within the "zone of interests" protected by the Act, meaning it must

17   allege an injury to a commercial interest in reputation or sales," and (2) the plaintiff must

18   allege proximate causation, meaning that it has suffered an "economic or reputational

19   injury flowing directly from the deception wrought by the defendant's advertising."

20

21          [7] Although Mr. Walters refers to this analysis as determining "standing," the Supreme
     Court has made clear that whether a plaintiff has a cause of action for false advertising is not a
     matter of "prudential standing" but rather whether the plaintiff "falls within the class of plaintiffs

22   whom Congress has authorized to sue under § 1125(a)."  *Lexmark*, 572 U.S. at 127-28.

*Lexmark*, 572 U.S. at 131-33.  Mr. Walters asserts that neither *Lexmark* prong is met. First, he asserts that Panda Paws is not within the "zone of interests" because it has not alleged that it is a competitor to Mr. Walters.  (Mot. at 17-19.)  Second, he contends that Panda Paws has alleged only abstract and speculative harm to its reputation and its nonprofit status, which is insufficient injury under *Lexmark*.  (*Id.* at 19-20.)

Contrary to Mr. Walters's assertion, a plaintiff need not be a direct competitor to the defendant to assert a claim for false advertising.  Indeed, *Lexmark* itself involved parties that were not direct competitors of one another.  *See Lexmark*, 572 U.S. at 138 ("[W]hen a party claims reputational injury from disparagement, competition is not required for proximate cause.").  Here, Panda Paws falls within the zone of interests protected by the Lanham Act because it is suing "not as a deceived consumer, but as a person engaged in commerce within the control of Congress whose position in the marketplace has been damaged" by Mr. Walters's allegedly false advertising.  *Id.* at 137 (internal citation and quotation marks omitted).  In addition, Panda Paws alleges that it is likely to suffer injury to its reputation as a result of Mr. Walters's false statements on his website.  (Am. Compl. ¶¶ 76-77.)  Injury to reputation is one of the types of commercial interests that the Lanham Act protects.  *Lexmark*, 572 U.S. at 137.  The court concludes that Panda Paws has sufficiently alleged that it comes within the class of plaintiffs whom Congress authorized to sue under Section 43(a) of the Lanham Act.

Moreover, the court finds that Panda Paws has plausibly alleged facts supporting its false advertising claim. The elements of a false advertising claim under Section 43(a) are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).  Mr. Walters disputes only the fifth element:  whether Panda Paws has plausibly alleged that it has been or is likely to be injured as a result of Mr. Walters's false statements.  (Mot. at 20-21; *see also* Reply at 8-10.)  Contrary to Mr. Walters's assertions, Panda Paws is not required to allege that it "sells a competing product, lost any sales, or suffered reputational harm."  (*See* Reply at 9.)  Rather, it is enough for Panda Paws to allege at this stage of the proceedings that the false statements are likely to cause it reputational harm.  *See Skydive Ariz., Inc.*, 673 F.3d at 1110; *see also* 15 U.S.C. § 1125(a)(1) (authorizing suit by "any person who believes that he or she is *likely to be* damaged" by a defendant's false advertising (emphasis added)).  Here, Panda Paws has alleged that Mr. Walters's false claims on his website about providing funds from sales of Duncan merchandise to Panda Paws are "likely to cause confusion about Panda Paws's nonprofit status and will likely cause others to believe that a relationship exists between [Mr.] Walters's website and Panda Paws when it does not."  (Am. Compl. ¶ 76.)  Thus, according to Panda Paws, Mr. Walters's false claims will result in Panda Paws's "loss of goodwill and damage to Panda Paws's ability to fundraise and attract donations."  (*Id.*)  The court finds that Panda Paws has plausibly alleged that it is likely to suffer injury from

1   Mr. Walters's false statements.  Therefore, the court DENIES Mr. Walters's motion to

2   dismiss Panda Paws's false advertising claim.

3          *b.*       ***False Association Claim***

4          A false association claim requires that the defendant's misuse of a trademark or

5   other distinguishing device confuse consumers as to the origin, approval, or endorsement

6   of the product.  *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 n.9 (9th Cir. 1992),

7   *abrogated on other grounds by Lexmark*, 572 U.S. 118 (2014).

8          Mr. Walters asserts that Panda Paws cannot state a false association claim because

9   it does not allege that he misused any "mark" to confuse consumers or to pass off his own

10  goods or services as those of Panda Paws.  (Mot. at 21-22.)  But the Supreme Court has

11  expressly held that Section 43(a) of the Lanham Act goes beyond trademark protection.

12  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003)); *see*

13  *also Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706 (4th Cir. 2016)

14  ("Significantly, the plain language of § 43(a) does not require that a plaintiff possess or

15  have used a trademark in U.S. commerce as an element of the cause of action.").  Panda

16  Paws argues that its name constitutes a "distinguishing device" recognized by the public

17  based on its recognition as a charitable organization and the fame it gained through

18  "Amanda to the Rescue."  (Resp. at 18 (citing Am. Compl. ¶¶ 69 & 21).)  It alleges that

19  Mr. Walters "intentionally exploited" its name by claiming that proceeds from his

20  website went directly to Panda Paws and that Mr. Walters's use of its name on his

21  website implies that Panda Paws "endorses, approves of, or is otherwise associated with"

22  Mr. Walters's Duncan merchandise.  (*Id.* at 18-19 (citing Am. Compl. ¶¶ 29, 37, 70-71).)

1    These allegations are sufficient to state a claim of false association under the Lanham

2    Act.

3           Mr. Walters also contends that Panda Paws has failed to allege an injury to a

4    commercial interest in sales or business reputation that was proximately caused by his

5    conduct.  Panda Paws, however, alleges that Mr. Walters's conduct is likely to cause loss

6    of goodwill and damage to its reputation, which are cognizable injuries under Section

7    43(a) of the Lanham Act.  *See Lexmark*, 572 U.S. at 137.  Therefore, the court DENIES

8    Mr. Walters's motion to dismiss Panda Paws's false association claim.

9           **5.      Violation of the Washington Personality Rights Act (Fourth Claim for
                        Relief)**

10          The Personality Rights Act provides that "[e]very individual or personality has a

11   property right in the use of his or her name, voice, signature, photograph, or likeness."

12   RCW 63.60.010.  A person infringes another's personality rights if he or she "uses . . . a

13   living or deceased individual's or personality's name, voice, signature, photograph, or

14   likeness . . . for purposes of advertising products, merchandise, goods, or services, or for

15   purposes of fund-raising or solicitation of donations . . .  without written or oral, express

16   or implied consent of the owner of the right," regardless of whether that use is for profit.

17   RCW 63.60.050; *see also* RCW 63.60.060 (authorizing a cause of action for infringement

18   of personality rights).

19          Ms. Giese alleges that Mr. Walters infringed her personality rights and those of

20   her minor child by posting the Viral Video on his website and by maintaining other

21   videos of Ms. Giese and her child on the Duncan Lou Who YouTube channel.  (Am.

1   Compl. ¶¶ 84-85.)  She alleges that these videos included images of herself and her child,

2   that Mr. Walters did not have her consent to use the videos, and that Mr. Walter's use of

3   the videos "inaccurately suggested that [Ms.] Giese endorsed" Mr. Walters's website, the

4   Duncan Lou Who YouTube channel, and Mr. Walters's sale of Duncan merchandise for

5   profit.  (*Id.*)  Thus, Ms. Giese asserts, Mr. Walters's use of the likenesses of Ms. Giese

6   and her minor child "constitutes use for purposes of advertising products, merchandise,

7   good, or services, or for purposes of fundraising or solicitation of donations," in violation

8   of RCW 63.60.050.  (*Id.* ¶ 86.)

9        Mr. Walters argues that he "in no manner 'used'" the Viral Video on

10   www.duncanlouwho.com because that website merely includes an embedded link that

11   redirects the user to his Duncan Lou Who YouTube channel.  (Mot. at 22-23.)  He further

12   argues that even if the link did constitute "use," Ms. Giese cannot state a claim under the

13   Personality Rights Act because his conduct falls within two statutory exemptions.  First,

14   he contends that any use of Ms. Giese's image in the Viral Video "in no manner" serves

15   to "inaccurately claim or state an endorsement" by Ms. Giese of his website or the

16   Duncan Lou Who channel.  (Mot. at 23-24 (quoting RCW 63.60.070(2)(b).)  Second, he

17   argues that any appearance of Ms. Giese in the Viral Video is "insignificant, de minimis,

18   or incidental."  (*Id.* (quoting RCW 63.60.070(6).)  Mr. Walters's arguments regarding

19   whether he "used" the videos or whether Ms. Giese's or her child's appearances in the

20   videos were "de minimis" ask the court to make factual determinations that it cannot

21   make on a motion to dismiss.  The court agrees, however, that Ms. Giese's Personality

22   Rights Act claim must be dismissed because she makes no allegation that Mr. Walters

1   inaccurately claimed or stated that she or her children endorsed his website or the Duncan

2   Lou Who YouTube channel.

3         The court finds *Enterprise Management Ltd., Inc. v. Construx Software Builders,*

4   *Inc.*, No. C19-1458DWC, 2020 WL 2795198 (May 29, 2020) instructive.  In that case,

5   the individual plaintiff alleged that the defendant's use of her name in a YouTube video

6   "inaccurately suggest[ed]" that she endorsed the defendants' use of her work in their

7   video and their "underlying ideas."  *Id.* at *8.  The plaintiff alleged that her name

8   appeared in the video three times in association with a change model that she had

9   developed.  *Id.*  The court dismissed the plaintiff's claim because the allegations

10   regarding the video "fail to show [the d]efendants inaccurately claimed or stated [the

11   plaintiff] endorsed the content in the video."  *Id.* at *9.  As a result, the Personality Rights

12   Act did not apply to the defendants' conduct under the exemption set forth in RCW

13   63.60.070(2)(b).  *Id.*  Here, as in *Enterprise Management*, Ms. Giese makes no allegation

14   that Mr. Walters "inaccurately claim[ed] or state[d]" that she endorsed his website and

15   channel.  She alleges only that an endorsement might be "suggested" by Mr. Walters's

16   use of the videos.  (*See* Am. Compl. ¶¶ 84-85.)  Nothing in the statute provides that a

17   "suggestion" of endorsement, rather than an inaccurate claim or statement of

18   endorsement, is sufficient to show that the exemption does not apply.  *See Enter. Mgm't*,

19   2020 WL 2795198, at *9.  Therefore, the court DISMISSES Ms. Giese's Personality

20   Rights Act claim without prejudice and with leave to amend.

21   *//*

22   *//*

# IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Mr. Walters's amended motion to dismiss (Dkt. # 14).

1.    The court DENIES Mr. Walters's motion to dismiss Panda Paws's claim for a declaratory judgment that Mr. Walters granted it an irrevocable implied license to use the Logo, the YouTube channel, and the videos.

2.    The court GRANTS Mr. Walters's motion to dismiss Panda Paws's claim for a declaratory judgment that it is entitled to use the Logo because Mr. Walters is estopped from asserting exclusive ownership of that Logo.  This claim is DISMISSED with prejudice.

3.    The court GRANTS Mr. Walters's motion to dismiss Panda Paws's claim for a declaratory judgment that it is entitled to use the Logo because Mr. Walters abandoned his copyright in the Logo.  This claim is DISMISSED without prejudice and with leave to amend.

4.    The court DENIES Mr. Walters's motion to dismiss Panda Paws's claim for breach of the Settlement Agreement.

5.    The court DENIES Mr. Walters's motion to dismiss Panda Paws's claims for false advertising and false association in violation of Section 43(a) of the Lanham Act.

6.    The court GRANTS Mr. Walters's motion to dismiss Ms. Giese's claim for violation of the Personality Rights Act.  This claim is DISMISSED without prejudice and with leave to amend.

1      Panda Paws shall file a second amended complaint, if any, alleging facts that

2  resolve the issues stated herein, by no later than 14 days from the filing date of this order.

3      Dated this 4th day of January, 2021.

4

5

6                                               JAMES L. ROBART
                                                United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 26